## THE JEANNETTE SKINNER.

(District Court, D. Maryland. June 16, 1919.)

1. SHIPPING ⊕⊃3½, New, vol. 8A Key-No. Series—LIABILITY TO SEIZURE OF VESSELS REQUISITIONED BY GOVERNMENT.

The provision of Shipping Board Act Sept. 7, 1916, § 9 (Comp. St. 1918, Append. § 8146e), making Shipping Board vessels, while employed solely as merchant vessels, subject to all laws, regulations, and liabilities governing merchant vessels, applies to vessels requisitioned under Act June 15, 1917, § 1.

2. SHIPPING ⊕⊃3½, New, vol. 8A Key-No. Series—GOVERNMENT VESSELS— SEIZURE ON PROCESS IN REM—"EMPLOYED SOLELY AS MERCHANT VESSEL."

A vessel requisitioned and operated by the government under authority of the Shipping Board, assigned to carry food products to the Swiss government, held "employed solely as a merchant vessel," within Shipping Board Act Sept. 7, 1916, § 9 (Comp. St. 1918, Append. § 8146e), and subject to process in a suit in rem, although officered and manned by naval men

In Admiralty. Suit by the Nippon Yusen Kabushiki Kaisha, owner of the Japanese steamship Ceylon Maru, against the steamship Jeannette Skinner. On objection to jurisdiction. Overruled.

Burlingham, Veeder, Masten & Fearey, of New York City, and George Weems Williams, of Baltimore, Md., for libelant.

Samuel K. Dennis, U. S. Atty, of Baltimore, Md., for respondent.

ROSE, District Judge. The American steamship Jeannette Skinner, hereinafter called the Skinner, was arrested upon process issued under a libel in rem filed against her by the owner of the Japanese steamship Ceylon Maru. By it it is sought to hold her liable for damage done by her to the Japanese vessel while the latter, on a clear day last November, lay at anchor near a French port.

The United States appeared specially and objected to the jurisdiction on three grounds:

[1] 1. That the Skinner belonged to the government, and could not be arrested without the latter's consent, and that, as she had been requisitioned under the provisions of the Urgent Deficiencies Appropriation Act of June 15, 1917, c. 29, 40 Stat. 182, section 9 of the Shipping Board Act of September 7, 1916, c. 451, 39 Stat. 728 (Comp. St. 1918, Append. § 8146e), subjecting Shipping Board vessels in certain circumstances to all the laws, regulations, and liability governing merchant vessels, had no application to her.

The decision of the Supreme Court, handed down June 2, 1919, in The Lake Monroe, 250 U. S. 246, 39 Sup. Ct. 460, 63 L. Ed. ——, disposes of this objection adversely to the government.

[2] 2. That at the time of her arrest the Skinner was not employed solely as a merchant vessel. Shortly before the institution of these

proceedings, the Division of Operations of the Emergency Fleet Corporation, acting under the general authority previously given by the United States Shipping Board, assigned the Skinner to carry food products from this country to Europe for the Swiss government, which undertook to pay a stipulated freight per ton. The Division of Operations employed a concern known as the Nafra Line, Incorporated, carrying on business as ships' agents, to do those things which people in this line of business habitually do for merchant ships for which they are the agents; that is to say, it looked after the loading of the ship, made in the first instance disbursements for her port and other expenses, saw that proper bills of lading were issued for her cargo, and attended to the collection of her freight money. In short, the Skinner was employed as a merchant vessel, and the fact that her cargo was owned by a foreign government did not alter the essentially mercantile character of the service she was rendering.

It is urged, however, that, as she was commanded by officers of the United States Navy and had a naval crew, she was immune from process. That would be true if the government had stood upon its right, and it would be equally true that her mere ownership by the United States protected her from seizure if the United States so willed; but the government may waive its privileges, if it sees fit, and by the ninth section of the act of 1916 the government has waived them, if, at the time of her arrest, the Skinner was solely employed as a merchant vessel. Whether she was or was not is to be determined by the nature of the work in which she was engaged, and not by the particular department of the government to which her officers and crew belonged. As has already been pointed out, she was, at the time of her arrest, being used as a merchant vessel, and as that only. It follows that process in rem could rightly be served upon her.

3. It is urged that the only way that a ship can become responsible in rem for a tort is through the fault of some one whose relation to her is such that she is answerable for his shortcomings, and that neither the government nor its property can ordinarily be held liable for wrongs done by its servants or agents. At the time of the collision, the Skinner was not employed as a merchant vessel, and therefore the libelant cannot rely upon section 9 of the act of 1916. This objection goes, not to jurisdiction, but to liability, and its consideration should be postponed until the hearing upon the merits.

It follows that the objection to jurisdiction must be overruled.